**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-50787**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JOSE ANGEL OVIEDO-ROSALES,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Western District of Texas**
**(97-CR-74-1)**

**July 17, 1998**

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

The issue in this roving Border Patrol vehicle-stop-and-drug-seizure-case is whether, as required by _**United States v. Brignoni-Ponce**_, 422 U.S. 873, 884 (1975), the Border Patrol Agents were aware of specific articulable facts reasonably warranting suspicion that Oviedo-Rosales was engaged in illegal activity. Because the Agents had such suspicion, we **AFFIRM**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 11 April 1997, United States Border Patrol Agents, Clanton and Banegas, were conducting an early morning roving patrol in the Marathon, Texas, area. At approximately 4:30 a.m., they were notified that sensors placed on Highway 2627, which leads directly from the United States-Mexico border crossing at La Linda, Mexico, had been activated by two vehicles traveling northwesterly. Sensors then indicated that the two vehicles had turned north onto Highway 385.

Consequently, the Agents positioned their vehicle approximately 28 miles north of the junction of Highways 2627 and 385. Around 5:00 a.m., a vehicle approached their location; with their headlights illuminating the vehicle, the Agents were able to observe two Hispanic males in it. After following it, and ascertaining that it was registered to a female from San Antonio, the Agents stopped the vehicle for an immigration check.

During the stop, a Border Patrol K-9 searched the exterior of the vehicle and alerted to possible narcotics. But, the ensuing search did not reveal any illegal drugs, and the men were allowed to leave.

At approximately 5:30 a.m., very shortly after the search of the first vehicle was completed, a second vehicle approached. By illuminating the vehicle with their headlights, the Agents observed an Hispanic male (defendant Oviedo-Rosales) in it. After following it, and ascertaining that it, like the first vehicle, was

registered to an individual from San Antonio, the vehicle was stopped for an immigration check.

Upon approaching the vehicle, Agent Clanton illuminated the back seat with his flashlight and saw several bundles wrapped in brown tape. (The bundles were later confirmed to contain 508.32 pounds of marijuana.) Oviedo-Rosales was arrested, and later charged with one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).

Two months after the arrest, Oviedo-Rosales moved to suppress, contending that the evidence was the result of an illegal detention. At the suppression hearing, Agent Clanton testified that he was an 18-year veteran of the Border Patrol, having worked in the area of the stop his entire career; that, one week before this stop, he had seized 719 pounds of marijuana and, approximately one month prior, another 336 pounds, with both seizures being on the same road on which he stopped Oviedo-Rosales; and that, the night before the stop in issue, illegal aliens were apprehended entering the United States along the same road. Moreover, the Agent testified that traffic patterns in the area of the stop are usually very light for the early morning hour; that he saw no southbound traffic on Highway 385; that the only two vehicles traveling northbound were those he stopped; that the highway is a known conduit for illegal aliens entering the United States; that usually, he recognizes the locals from the area; and that, for the

stop in issue, he did not recognize either the vehicles or their occupants.

The Agent testified further that a significant factor he considered when deciding to stop Oviedo-Rosales was the possibility of a "lead-car/load-car" arrangement, whereby the first vehicle (lead-car) scouts the highway for law enforcement, and then communicates to the second, drug-carrying vehicle (load-car) whether it is safe to travel. The Agent testified that two vehicles traveling in tandem in the pre-dawn hours could be an indication of such an arrangement, and that the K-9 alerting to the first vehicle could have been an indication of a lead-car/load-car arrangement, because a scent of marijuana could be on the first vehicle as a result of its being near the second while it was being loaded.

Based upon detailed, written findings of fact and conclusions of law, the district court held that the Agents had reasonable suspicion to initiate the stop, and therefore denied the suppression motion. A bench trial was held, and Oviedo-Rosales was found guilty. He was later sentenced, *inter alia*, to 60-months imprisonment.

II.

As a general rule, Border Patrol agents on roving patrol may stop "vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles" are engaged in illegal activity. *Brignoni-Ponce*, 422 U.S. at 884; *see also* *United States v. Cortez*, 449 U.S. 411, 417, 421-22 (1981).

In reviewing the denial of a suppression motion, the factual findings are reviewed for clear error; the legal conclusions, including whether there was reasonable suspicion, *de novo*. *See United States v. Inocencio*, 40 F.3d 716, 721 (5th Cir. 1994). In so doing, "[t]he evidence presented at a pre-trial hearing on a motion to suppress is viewed in the light most favorable to the prevailing party". *Id.*

In asserting that the district court erred in denying his suppression motion, Oviedo-Rosales does not claim that any of the findings of fact are clearly erroneous. He claims only that the Agents lacked the requisite reasonable suspicion. As stated, that conclusion of law is reviewed *de novo*.

Again, to establish reasonable suspicion, the Border Patrol agent must identify specific, articulable facts, together with reasonable inferences therefrom, that reasonably warrant a suspicion that a vehicle is involved in illegal activity.

*Brignoni-Ponce*, 422 U.S. at 884; *Cortez*, 449 U.S. at 417, 421-22.

Moreover, "[i]n making a determination of reasonable suspicion, the agents (and the courts reviewing the agents' actions) must take the totality of the circumstances into account". *United States v. Nichols*, 142 F.3d 857, 865 (5th Cir. 1998) (citing *Cortez*, 449 U.S. at 417).

It is well established that, in ruling on reasonable suspicion *vel non*, the district court may consider, among other factors,

> (1) known characteristics of a particular area, (2) previous experience of the arresting agents with criminal activity, (3) proximity of the area to the border, (4) usual traffic patterns of that road, (5) information about recent illegal trafficking in aliens or narcotics in the area, (6) the behavior of the vehicle's driver, (7) the appearance of the vehicle, and (8) the number, appearance and behavior of the passengers.

*Inocencio*, 40 F.3d at 722 (quoting *United States v. Casteneda*, 951 F.2d 44, 47 (5th Cir. 1992)). Restated, this list is not exclusive. *Brignoni-Ponce*, 422 U.S. at 884; *Cortez*, 449 U.S. at 421 n.3.

Obviously, reasonable suspicion is a fact intensive determination; therefore, as stated, "each case must be examined from the 'totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances'". *Id.* In other words, "[i]n the totality of the circumstances analysis, each

case necessarily must turn on its own facts". ***Nichols***, 142 F.3d at 871.

In the light of the numerous factors a court may consider in ruling on reasonable suspicion, "'reason to believe that the vehicle had come from the border is a vital element,' although 'the belief that the vehicle has crossed the border is not necessary if other factors constitute reasonable suspicion to stop the vehicle'". ***Id.*** at 865 (quoting ***United States v. Pallares-Pallares***, 784 F.2d 1231, 1233 (5th Cir. 1986)).

Oviedo-Rosales maintains that there was nothing unusual about either his vehicle or his appearance that would be indicative of drug smuggling; that his presence on Highway 385 at an early hour of the morning is of no consequence; and that the stop could not have been based on a "lead-car/load-car" arrangement, because the two vehicles were not traveling in close proximity, and the K-9 alerting to the first vehicle could not justify stopping him.

Based upon our review of the record, and in the light of the totality of the circumstances, and recognizing that the officers had reason to believe Oviedo's vehicle was approaching from the border, the Agents were aware of specific articulable facts that created reasonable suspicion that Oviedo-Rosales was engaged in illegal activity. (Again, Oviedo-Rosales does not challenge any of the district court's findings of fact.) Pursuant to the ***Brignoni-Ponce*** factors, the record discloses the following: (1) the area

where Oviedo-Rosales was stopped is a known conduit for illegal aliens and drugs entering the United States, as evidenced by Agent Clanton's testimony about illegal aliens being apprehended in the area and about his recent drug seizures along the same road; (2) Agent Clanton is an 18-year veteran of the Border Patrol, having worked his entire career in the area of the stop; (3) the area of the stop is approximately 52 miles from the border, with the Agent having followed the vehicle pre-stop from a point even closer to the border; (4) traffic patterns for the pre-dawn hours on Highway 385 are very light; (5) illegal aliens were apprehended the night before this stop, and Agent Clanton had seized over 1000 pounds of marijuana along the same road within a month of the stop; (6) Oviedo-Rosales behaved normally; (7) there was nothing unusual about the appearance of his vehicle; and (8) the vehicle was occupied only by Oviedo-Rosales.

In addition, based on Agent Clanton's experience, the suspicion of a "lead-car/load-car" arrangement was very persuasive in his decision to stop Oviedo-Rosales. He testified that sensors indicated two vehicles traveling north from the border area; that the two vehicles stopped were the only ones traveling north on Highway 385; and that the first vehicle (possible "lead-car") may have contained the scent of marijuana from being in close proximity to the second vehicle (possible "load-car") while it was being loaded with marijuana. Moreover, the occupants of the first

vehicle told Agent Clanton they had come from the La Linda border crossing, after finding it closed. Given these circumstances, the likelihood that both vehicles were approaching from the border, as well as the nature of the road and time of day, the suspicion of a "lead-car/load-car" arrangement was a significant, and quite reasonable factor to consider in deciding to stop Oviedo-Rosales' vehicle. *See, e.g., **Inocencio***, 40 F.3d at 723 (when viewed from the totality of the circumstances, suspicion of lead-car/load-car arrangement, combined with other factors, created sufficient level of reasonable suspicion.)

As our court reminded recently, "[a]lthough some of these factors would not alone amount to reasonable suspicion, reasonable suspicion determinations are not limited to analysis of any one factor". **Nichols**, 142 F.3d at 866. Again, based on the totality of the circumstances, and "view[ing] the evidence [presented at the suppression hearing] in the light most favorable to [the prevailing party—in this case,] the government", there were specific articulable facts that led the Agents "to reasonably suspect that [Oviedo-Rosales] was engaged in illegal activity". **Id.** at 872-73.


III.

For the foregoing reasons, the judgment is

**AFFIRMED.**